EXHIBIT 2

**Attorney Work Product**

**Privileged and Confidential**

### MEMORANDUM OF UNDERSTANDING

This Memorandum of Understanding is made this 29 day of October 1998, between Ionica plc (the "Company"), Christopher Hughes, Neville Kahn each of Messrs PricewaterhouseCoopers, Plumtree Court, London, EC4A 4HT ("PWC") and Gareth Hughes of Messrs Ernst & Young, Becket House, 1 Lambeth Palace Road, London SE1 7EU ("E&Y").

(A)     It is proposed by the Company that Messrs Hughes, Kahn of PWC be appointed joint administrators of the Company (the "PWC Administrators") pursuant to a petition presented to this Court ("Administration Petition"), for the purpose of achieving a more advantageous realisation of the Company's assets than would be effected on a winding up.

(B)     It is also proposed by the Company that Mr Gareth Hughes of E&Y be appointed as a third administrator of the Company (the "E&Y Administrator") for the particular purpose of investigating all and any claims as might be maintainable by the Company in relation to the Company's trading during any period or periods prior to the date upon which an Administration Order is made by the Court. The PWC Administrators and the E&Y Administrator shall hereinafter be referred to collectively as the "Administrators".

(C)     It has been agreed between all and each of the Company, the PWC Administrators and the E&Y Administrator that this Memorandum be entered into in order to set out the basis upon which the responsibilities, powers and duties of the respective Administrators be divided and delineated for the purposes of an effective and cooperative administration of the Company. In particular, this Memorandum has been formulated to establish a mechanism for dealing with:-

    (a)     the continued activity of the Company in an administration to ensure a more advantageous realisation of the Company's assets than would be effected on a winding up;

    (b)     the pursuit of investigations and (where appropriate) the instigation of actions or proceedings (legal or otherwise) in respect of the Company's business and affairs specifically during the period 1996 to the date upon which the Administration Petition is presented to the court,

    (c)     conflicts of interest between the PWC Administrators, the E&Y Administrator and the Company (whether arising from any investigation, action or other proceedings legal or otherwise); and

    (d)     the convening of meetings of the Company's creditors or a creditors' committee (if any).

## THE AGREEMENT REACHED IS AS FOLLOWS:

1. **Delineation of responsibilities and powers**

1.1 The PWC Administrators and each of them shall be responsible for the continued activity of the Company in administration for the purpose of achieving a more advantageous realisation of the Company's assets than would be effected on a winding up. The PWC Administrators shall exercise all functions, powers, rights, authorities and discretions afforded them under the Insolvency Act 1986 and the Insolvency Rules 1986, for such purpose, acting with their own discretion. Such powers shall include all and any of those powers pertaining to the realisation of the property of the Company set out in sections 1-27 of the Insolvency Act 1986 and those set out in Schedule I of the Insolvency Act 1986 and the PWC Administrators shall be entitled to exercise such functions, powers, rights, authorities and discretions without requiring the sanction of the E&Y Administrator.

1.2 The E&Y Administrator shall be responsible for the investigation into the business and affairs of the Company for the purpose of establishing all and any claims as might be maintainable by the Company in relation to the Company's trading during any period or periods prior to the date upon which an Administration Order is made by the Court, whether against the directors of the Company, its financial, legal and/or other advisers or any other person or corporate entity whatsoever and wheresoever situated (obtaining, where appropriate, the assistance and cooperation of the PWC Administrators). The E&Y Administrator shall exercise all functions, powers, rights, authorities and discretions afforded him under the Insolvency Act 1986 and the Insolvency Rules 1986 for such purpose, and the E&Y Administrator shall be entitled to exercise such functions, powers, rights, authorities and discretions without requiring the sanction of all or any of the PWC Administrators. Such investigatory powers of the E&Y Administrator will include, inter alia, those pertaining to investigations into the Company's affairs pursuant to Sections 234 to 246 of the Insolvency Act 1986 and those in Schedule I of the Insolvency Act 1986. Any investigations, including the initiation, continuance, settlement or compromise of any legal or other proceedings against any company or person whatsoever or wheresoever situated (whether such proceedings are commenced within the jurisdiction of the UK courts or in any foreign jurisdiction) shall be undertaken and pursued by the E&Y Administrator, under whichever powers he deems appropriate, acting with his sole discretion.

1.3 Notwithstanding paragraph 1.2 above, the PWC Administrators shall be entitled to pursue any claims or proceedings in respect of trade debtors or other claims that arise directly from or in connection with either the ordinary course of business of the Company, or from any asset sales or trading following the appointment of the PWC Administrators.

1.4 The PWC Administrators (and each of them) and the E&Y Administrator acknowledge the respective powers of the relevant appointed Administrator to appoint legal advisers, agents or other advisers to assist them and each of them in the exercise of their powers and duties which are divided and delineated, as agreed and determined by this Memorandum.

1.5 The PWC Administrators and each of them shall use their reasonable endeavours to provide (or procure the provision of) such information, documentation or assistance to the E&Y Administrator as he may require for the purpose of exercising any of the functions, powers, rights, authorities or discretions delegated to him under the terms of this Memorandum.

1.6 The E&Y Administrator shall use his reasonable endeavours to provide (or procure the provision of) such information, documentation or assistance to the PWC Administrators as they may require for the purpose of exercising any of the functions, powers, rights, authorities or discretions delegated to them under the terms of this Memorandum.

2. Duration and new officeholders

2.1 It is intended that this Memorandum of Understanding shall continue in full force and effect until all insolvency procedures in relation to the Company are completed and the relevant officeholders (of PWC and/or E&Y) have vacated office.

2.2 It is hereby agreed between all and each of the Company, the PWC Administrators and the E&Y Administrator that, in the event of a new administrator being appointed during the course of the administration, or in the event of a subsequent liquidation, company voluntary arrangement or scheme of arrangement of the Company (pursuant to which any or all of the PWC Administrators or E&Y Administrators may be appointed to act as a duly appointed officeholder) they will each use their reasonable endeavours to procure that such new administrator, liquidator, supervisor, or scheme administrator or other appointed officeholder shall enter into an agreement of adherence to and compliance with the terms of this Memorandum.

2.3 The PWC Administrators, the E&Y Administrator and each of them may resign or vacate office in accordance with the general provisions as set out in the Insolvency Act 1986, or by order of the High Court of Justice of England and Wales.

3. Conflicts

3.1 In the event of an actual or potential dispute, conflict of interest, matter or circumstance between all or any of the PWC Administrators and the E&Y Administrator as to delineation of responsibilities or otherwise which cannot be resolved amicably between them (a "Dispute"), an expert may be appointed by the Administrators (pursuant to Clause 3.2) for the purpose of determining such dispute or conflict or, the Administrators may be at liberty to seek the directions of the Court pursuant to Section 14 of the Insolvency Act.

3.2 A Conflict Expert shall be such independent expert as may be specifically appointed by the Administrators, acting unanimously, for the purpose of the Dispute. In the absence of any such agreement such an expert may be appointed on nomination by the President of the Society of Practitioners of Insolvency.

3.3   Such Conflict Expert shall be requested to make a decision on the Dispute as soon as reasonably practicable, and any decision of the Conflict Expert shall (in the absence of fraud or manifest error) be final and binding on each interested party.

3.4   The Conflict Expert shall act as an expert not an arbitrator. Any person party to or interested in the relevant Dispute referred to the Conflict Expert shall have the right to make representations to the Conflict Expert. Other matters of procedure shall be determined by the Conflicts Expert in his/her absolute discretion. The Conflict Expert's costs and expenses in respect of any matter referred to him/her shall be borne by the Company.

3.5   In the event of a failure by the Conflict Expert to make a decision in respect of the Dispute, the dispute shall be referred to for determination to the High Court of Justice of England and Wales.

4.    Indemnity/Liability

4.1   The PWC Administrators, the E&Y Administrator and each of them shall be entitled to an indemnity from the assets of the Company in respect of the performance of their various duties in the administration of the Company as divided and delineated under the terms of this Memorandum.

4.2   The PWC Administrators shall incur no liability for any act or omission of the E&Y Administrator and the E&Y Administrator shall incur no liability for any act or omission of all or any of the PWC Administrators.

4.3   The PWC Administrators and each of them agree to indemnify and keep indemnified the E&Y Administrator in respect of any cost, loss, liability, claim or damage which the E&Y Administrator incurs or suffers as a result of the performance by the PWC Administrators and each of them of their responsibilities, duties and obligations whether provided under statute or the terms of this Memorandum in respect of the administration of the Company.

4.4   The E&Y Administrator agrees to indemnify and keep indemnified the PWC Administrators in respect of any cost, loss, liability, claim or damage which the PWC Administrators incur or suffer as a result of the performance by the E&Y Administrator of his responsibilities, duties and obligations whether provided under statute or the terms of this Memorandum in respect of the administration of the Company.

4.5   In addition it is acknowledged by all parties to this agreement that neither the PWC Administrators nor the E&Y Administrator shall incur any personal liability for any of their acts or omissions in carrying out their functions as officeholders in accordance with this Memorandum.

## 5. Remuneration

5.1 The PWC Administrators, the E&Y Administrator and each of them hereby acknowledge the rules and regulations in respect of remuneration of office holders and acknowledge the rights of the duly appointed creditors committee (if there is one) to determine on which basis remuneration is to be fixed or applied, being mindful at all times of the rights accorded to creditors in relation to fees under the insolvency legislation.

5.2 The E&Y Administrator acknowledges that the remuneration and expenses of work to be undertaken by him pursuant to paragraph 1.2 shall not be paid or payable out of the assets of the Company or as an administration expense or out of any funding made available by Ionica Group plc specifically for the purpose of the administration (the "Funding") unless and until the Funding has been repaid to Ionica Group plc in full. Thereafter, subject to paragraph 5.3 below, the E&Y Administrator shall be entitled to be paid his remuneration and expenses on the same basis as the PWC Administrators remuneration and expenses are paid and payable in the administration of the Company.

5.3 The E&Y Administrator acknowledges that to the extent the PWC Administrators realise assets for the purposes of discharging in full or in part a secured creditor or a subrogated wages claim of a secured creditor of the Company, the remuneration and expenses of the PWC Administrators (and only the PWC Administrators) incurred in respect of the disposal of such assets shall be discharged from the proceeds of that realisation. For the avoidance of doubt, any proceeds of realisation not applied or required to discharge the claims of a secured creditor or a subrogated wages claim of a secured creditor of the Company shall be available to pay the remuneration and expenses of the E&Y Administrator on the same basis as the PWC Administrators' remuneration and expenses are paid and payable in the administration of the Company.

5.4 Subject always to paragraphs 5.2 and 5.3 above, all remuneration and expenses of work undertaken by the E&Y Administrator pursuant to statutory obligations, duties and/or functions which, save for the appointment of the E&Y Administrator would have been an obligation, duty or function to be performed by the PWC Administrators alone, and which the PWC Administrators and the E&Y Administrator agree should be carried out by the E&Y Administrator, shall be paid and payable out of the assets of the Company as an administration expense on exactly the same basis as the PWC's remuneration and expenses are paid and payable in the administration of the Company.

## 6. Meetings

6.1 The E&Y Administrator acknowledges the power and authority of the PWC Administrators to summon and convene meetings of the Company's creditors or a creditors committee (if any) in accordance with the Insolvency Act 1986 and Insolvency Rules 1986, including, but not limited to, a meeting convened pursuant to Section 23 of the Insolvency Act 1986.

6.2 The PWC Administrators and each of them acknowledge the power and authority of the E&Y Administrator to summon and convene meetings of the Company's creditors or a creditors committee (if any) in accordance with the Insolvency Act 1986 and Insolvency Rules 1986, in each case for the purpose of appraising it or them of the results of any investigations carried out by him and determining agreed strategy in respect of any potential action or proceedings resulting therefrom.

6.3 Where possible, the Administrators and each of them shall use their reasonable endeavours to communicate to the relevant Administrator(s) any decision to summon and convene a meeting of creditors or the creditors committee and shall ensure that where appropriate meetings so convened address issues relevant to the performance of the duties and obligations of both the PWC Administrators and the E&Y Administrator, to avoid unnecessary duplication of cost and effort.

6.4 The PWC Administrators (and each of them) and the E&Y Administrators agree to provide relevant information to the relevant Administrators in respect of any proposed meetings referred to in clause 6.1 or 6.2 and agree to liaise with the relevant Administrators in respect of all and any matters to be discussed or resolved at such meeting, in particular where matters pertaining to the specific responsibilities of the relevant Administrator (as agreed in this Memorandum) are to be considered or determined by such meeting.

7. <u>Governing Law and Jurisdiction</u>

7.1 This Memorandum shall be governed by and construed in accordance with English law.

7.2 In relation to any legal action or proceedings arising out of or in connection with this Memorandum, and on any objections on the grounds of venue or forum non-conveniens or any similar grounds, the parties hereto submit to the jurisdiction of the High Court of Justice in England and Wales.

This **MEMORANDUM of UNDERSTANDING** has been agreed by and is hereby signed by:

.......................................

Chris Hughes

.......................................

Neville Kahn

.......................................

Gareth Hughes