EXHIBIT 3

No 006182

IN THE HIGH COURT OF JUSTICE     Ch ~~1998 No. 106188~~ of 1998

CHANCERY DIVISION

COMPANIES COURT

THE HONOURABLE MR JUSTICE PARK

10 December 1998

IN THE MATTER OF IONICA PLC (IN ADMINISTRATION)

AND IN THE MATTER OF THE INSOLVENCY ACT 1986

ORDER

UPON the Application of the Joint Administrators of Ionica plc (the "Company") pursuant to section 14 (3) of the Insolvency Act 1986

AND UPON HEARING leading Counsel on behalf of the Joint Administrators of the Company

AND UPON READING the draft affidavit of Mr Andrew Wilkinson of Cadwalader, Wickersham & Taft

AND UPON leading Counsel on behalf of the Joint Administrators undertaking to issue the Application and have sworn the draft affidavit of Mr Andrew Wilkinson in the form presented to the Court

IT IS ORDERED THAT:

1. The Joint Administrators of the Company be at liberty to file on behalf of the Company for the commencement of Chapter 11 proceedings in the United States of America;

2. The documents filed in respect of this Application be not open to inspection pursuant to Rule 7.31(5) of the Insolvency Rules 1986; and

3. The costs of this application be an expense of the administration.

Dated: 10th December 1998



IN THE HIGH COURT OF JUSTICE

CHANCERY DIVISION

COMPANIES COURT

MR JUSTICE PARK

10TH DECEMBER 1998

IN THE MATTER OF IONICA PLC (IN ADMINISTRATION)

AND IN THE MATTER OF THE

INSOLVENCY ACT 1986

ORDER

## CADWALADER

Cadwalader, Wickersham & Taft

55 Gracechurch Street
LONDON
EC3V 0EE
Tel: 0171 456 8500
Fax: 0171 456 8600/1

## Note of Hearing for directions pursuant to Section 14(3) of the Insolvency Act 1986
## Mr Justice Park - 9 December 1998 - Court 59
### In the matter of Ionica plc (in administration)

In attendance:   Michael Crystal QC ("MC")
                 Yvette Croucher (CWT)
                 Richard East (CWT)
                 Luke Tolaini (Linklaters)
                 Jason Pithers (Clerk to MC)

MC opened by stating that the purpose of the hearing was for the Joint Administrators (the "Administrators") of Ionica plc (the "Company") to obtain directions from the Court pursuant to section 14(3) of the Insolvency Act 1986. MC stated that the Administrators came from two different firms, but that for the purposes of this hearing, the two firms had instructed him to appear before the Court on their behalf.

MC referred to the administration order made by Mr Justice Rattee and explained that the statutory purpose of the administration was for a better realisation of the Company's assets than would be achieved on a winding up. MC explained that it was not conceived at the original hearing that it would be necessary to instigate full blown US proceedings. MC then went on to explain that the two possible proceedings in the US in respect of comity were either pursuant to section 304 Bankruptcy Code or Chapter 11 proceedings.

MC explained that where appropriate in past cases, Chapter 11 proceedings had been pursued in the US but it was a relatively unusual event. Accordingly, the Joint Administrator thought it appropriate to inform the Court of the Administrators intention to do so. MC explained that the Administrators were seeking an order from the Court giving them liberty to file for Chapter 11 proceedings should they wish to file. MC explained that this filing would create a similar insolvency process in the US. MC reiterated that the Administrators were not asking the Court for an order that they should make the filing but that, the order should simply give the Administrators liberty to file should they choose to do so.

MC explained that the purpose of such filing would be to pursue certain causes of action, which would be available to the Administrators in the US. He explained that the relationship between the Company and its parent (Ionica Group plc ("Group")) was being investigated in the UK. There had been some investigation into the circumstances in which Group had taken security over the assets of the Company which may or may not amount to grounds upon which to challenge Group's claims against the Company in the UK. The Administrators had been advised by counsel both here and in the US that there were some bases for challenging this security and Group's claims in the US. MC explained that there was a nexus with the US in that the Company had both creditors and assets present in the jurisdiction. MC stated that there was a real possibility that the Administrators would be able to use the provisions of the common law of Bankruptcy in the US to challenge/rearrange the priority of Group's claims against the Company to benefit the Company general body of creditors.

Mr Justice Park (the "Judge") wished to clarify Group's position vis-a-vis the Company. He stated that, first, to the extent that Group was a secured creditor Group, it would have a claim as such; his understanding was that second, to the extent that Group was an unsecured creditor (and to the extent that the Company could challenge Group's security) Group would claim in the insolvency of the Company on a pari passu basis with all the other creditors.

The Judge also wished to clarify with MC whether the object of the filing for Chapter 11 in the US was, through the processes of the US Bankruptcy Court, to dislodge the rights of Group against the Company.

MC confirmed these points.

The Judge stated that it was his understanding that the Administrators owe a duty to the general body of creditors (which included Group). The Judge questioned the appropriateness of the Chapter 11 filing, given that the purpose of the filing was in fact to favour the interests of one body of creditors against the interests of another, namely Group.

MC explained that, should the Administrators be able to file for Chapter 11 in the US, it should not be seen as favouring one group of creditors, rather that of obtaining an asset not otherwise available. He explained that the usual role of a liquidator/administrator in these situations was to stand back and assess the interests of the general body of creditors. They would apply to the Court for directions on issues of concern. The Administrators could initiate appropriate causes of action and the intention of this one was to help realise considerable value to the ordinary body of creditors. If the Administrators are able to launch proceedings in the US (if there is jurisdiction and an economic advantage) to consider if it is practical to reorganise the interests of the Group as a creditor of the Company, the Administrators must consider doing so.

The Judge asked if the Company was a 100% subsidiary of Group. MC confirmed that this was the case.

MC then went on to explain that an argument usually raised in these circumstances is that the filing of the Chapter 11 by the Administrators amounts to forum shopping; and that the Administrators should not be entitled to go to the US for the purpose of pursuing actions which are not available to the Administrators in England. MC stated that this was not a good argument. MC said that (summarising the law for the present purposes) the Administrators could invoke US processes if they were entitled to. He said the case-law was plain. He referred to the recent Court of Appeal case *(Barclays Bank -v- Homan:Maxwell)* confirming the judgment of Hoffman J which was authority for the proposition that officeholders are allowed to go to another forum and initiate proceedings in that forum if they have good grounds to do so.

MC stated that in this case the filing of Chapter 11 was a proper thing for the Administrators to do in these circumstances; the appropriateness of the Administrators' actions in the US was a matter for the US Court, not the English Court. Here there was a nexus with the US.

The Judge said he wished to explore this further. He commented that the Chapter 11 is an action the Administrators can launch and the Court could not stop them doing this because the Administrators are in office. However, he wanted to understand the Administrators position if Counsel for Group were come to the Court next week to question the Administrators' actions on the basis that the Administrators have not balanced fairly the interests of the creditors.

MC stated that Group would be entitled to come to Court to challenge the filing of the Chapter 11 as a matter of law. He explained that, first, the US proceedings were an attempt to release a "share of the cake" for those entitled and should not be seen as an attempt to prefer one group of creditors over another. Second, if Group came before the Court next week and the Court was satisfied that the Administrators' action were improper then the Court could give a direction to the Administrators to stop the Chapter 11 proceeding.

The Judge questioned whether Group should have been given notice of this hearing and whether they should have attended given that the 'real purpose' of the Chapter 11 filing appeared to be to attack Group's claims in the administration of the Company.

MC responded that he had no doubt that Group would not like the present application. However he said that notice in these circumstances would not normally be given to Group. This was an ex parte application by the Administrators with notice to the Court requesting liberty to apply for directions.

The Judge reiterated that this order would surely prejudice Group's position and he was concerned that they did not have an opportunity to challenge the order. He said that he recognised that it might be a better course for the Administrators to obtain US funds through proceedings in the US. However, he noted that by launching the Chapter 11 proceedings in the US, rather than on the back of a UK insolvency, there was a considerable prospect that assets would be diverted from Group to other creditors.

MC said that if Group had been given notice there were two things that may have happened. First, it is important that the escrowed funds in the US are in place for the Chapter 11 filing. If they are released then the opportunity is lost. This could happen anytime. Second, if Group object to the filing they may delay the process sufficiently to prevent the filing ever going ahead because the funds in the US may have by then gone. There was nothing to prevent Group from challenging the filing of Chapter 11 proceedings in the English Court; Group could apply for an injunction preventing the Administrators (who are officers of the Court) from filing. If it was thought that Group would succeed with an injunction the Administrators would not have been advised to proceed. However, a challenge by Group was a second stage. MC reiterated that the Administrators were simply asking the Court to give them liberty to file; they were not asking the Court to sanction the filing. MC respectfully submitted that the question of filing was a question for the Administrators.

The Judge inquired whether it would be possible to put something in the order which would require the Administrators to give Group notice of the directions order and the Chapter 11.

MC stated that he was confident that Group would be told promptly by the Administrators of any filing in the US. MC was happy to undertake on behalf of the Administrators that after the filing of the Chapter 11 proceedings that Group would be served with the Chapter 11 papers and a copy of the order made by the Judge.

The Judge stated that it was proper for the Administrators to launch Chapter 11 proceedings in the US if its best actions were there. His only concern was that the coordinate purpose of the filing was to improve the position of the general body of creditors at the expense of Group which might not be what the Administrators were in office to do. However, the Judge stated that if Group received prompt notice of any Chapter 11 filing he would grant the order and the Chapter 11 proceedings could be launched. This decision was for the Administrators.

MC confirmed that this would be done.

The Judge then asked what effect an English injunction would have (if Group were to obtain one to prevent the Administrators from filing a Chapter 11) on the US Court.

MC stated that the injunction would be effective so far as the English Court would be concerned and would prevent the Administrators from continuing with the Chapter 11, but MC could not give any assurances in respect of the US Court. The US Court may appoint a receiver in place of the Administrators, for the continuation of the Chapter 11 proceedings. This was a matter which the English Court would not be able to control.

The Judge questioned whether a Court order was in fact necessary, but in so far as it was, if the Administrators thought it was needed, he would grant it as requested.

RCE/YC